IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 5:23-CR-654 |
| Plaintiff, | : | |
| | : | JUDGE J. PHILIP CALABRESE |
| vs. | : | |
| | : | |
| BO BRYANT HOSTETTLER, | : | **MOTION TO DISMISS INDICTMENT** |
| | : | |
| Defendant. | : | |

Bo Bryant Hostettler moves, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss his Indictment, which charges possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The law violates the Second Amendment on its face and as applied to Mr. Hostettler.[1]

**I.  The applicable constitutional analysis for imposing restrictions on firearms.**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court reaffirmed that the Second Amendment right to bear arms is not a second-class right. 142 S. Ct. 2111, 2156 (2022). The Court rejected decades of "judicial deference to legislative interest balancing" in the form of means-end scrutiny in Second Amendment jurisprudence. *Id.* at 2131. Instead, *Bruen* instructs courts to ask only: (1) whether the Second Amendment's plain text covers the conduct, and (2) whether the Government can show the law is consistent with historical firearm regulations. *Id*. at 2126. As the Fifth Circuit recently explained, *Bruen* "fundamentally changed" Second Amendment analysis and rendered prior precedent obsolete. *See United States v. Rahimi*, 61 F.4th 443, 450-51 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023). Under this new framework, the Fifth

---

[1] This Court consolidated several pending motions to dismiss and heard oral argument on this issue on January 16, 2024. *See, e.g., United States v. Gardner*, Case No. 4:23-CR-503.

Circuit has struck down both of the federal criminal laws that have come before it since *Bruen*, §§ 922(g)(8) and (g)(3). *See id*. (holding § 922(g)(8) is unconstitutional); *United States v. Daniels*, 77 F.4th 337, 355 (5th Cir. Aug. 9, 2023) (holding § 922(g)(3) is unconstitutional as applied to Daniels).

For many of the same reasons, § 922(g)(1) violates the Second Amendment. Multiple courts have already found the law is unconstitutional. *See Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (en banc); *United States v. Bullock*, __ F. Supp. 3d __, No. 3:18-cr-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023); *United States v. Forbis*, No. 23-CR-133-GKF, 2023 WL 5971142, at *1 (N.D. Okla. Aug. 17, 2023) (unconstitutional as applied, government failed to meet its burden); *United States v. Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023) (case dismissed because the government failed to meet its burden); *United States v. Harper*, No. 1:21-CR-0236, 2023 WL 5672311, at *1 (M.D. Pa. Sept. 1, 2023) (unconstitutional as applied because the government did not meet its burden); *United States v. Prince*, No. 1:22-CR-00240, 2023 WL 7220127 (N.D. Ill., Nov. 2, 2023) (finding that Section 922(g)(1) is unconstitutional facially and as-applied to felons covered under Second Amendment's plain text and government could not establish historical tradition of firearm regulation); *United States v. Delany*, No. 22 CR 463, 2023 WL 7325932 (N.D. Ill. Nov. 7, 2023) (same); *United States v. Salme-Negrete*, No. 22 CR 637, 2023 WL 7325888 (N.D. Ill. Nov. 7, 2023) (same); *United States v. Griffin*, No. 21-CR-00693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023), *appeal filed*, (holding unconstitutional as applied); *United States v. Leblanc*, No. CR 23-00045-BAJ-RLB, 2023 WL 8756694 (M.D. La. Dec. 19, 2023) (holding 922(g)(1) is unconstitutional as applied, government failed to show an historical analogue).

The statute impacts the core Second Amendment right to possess a firearm for self-defense. This right belongs to all "the people" under the Constitution, including felons. And the Government cannot meet its burden to show § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation, because there is no relevant historical evidence of categorically disarming felons.

II.   **The Second Amendment's plain text covers the conduct prohibited by § 922(g)(1).**

Section 922(g)(1) permanently disqualifies all felons from exercising the fundamental right to possess firearms for self-defense. Under the plain text of the Second Amendment, it is presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2129–30.

   a. **Firearm possession is covered by the Second Amendment's plain text.**

The Second Amendment protects "the right of the people to keep and bear Arms …." U.S. Const. amend. II. The plain text, "keep and bear arms," means possessing and carrying weapons. *Heller*, 554 U.S. at 583–92. The Court in *Bruen* clarified that the core right to possess and carry a firearm for self-defense, identified in *Heller* and *McDonald*, extends outside the home. 142 S. Ct. at 2122. Section 922(g)(1) is a complete ban on all firearm possession, with no limitations on type or use. It, therefore, impacts the core Second Amendment right to possess a firearm for self-defense. *See McDonald*, 561 U.S. at 767; *see also generally Bruen*, 142 S. Ct. 2111.[2]

The sole question at this stage of the *Bruen* analysis is whether the "conduct" is covered by the plain text of the Second Amendment. *Id*. at 2126; *United States v. Bullock*, __ F. Supp. 3d __, No. 3:18-cr-165, 2023 WL 4232309, at *20 (S.D. Miss. June 28, 2023) ("*Bruen* step one

---

[2] Legislative history suggests that Congress, in passing the modern version of § 922(g)(1), acknowledged that it would infringe an individual's right to bear arms, but wrongly concluded that the Second Amendment does not confer an individual right to bear arms. *See, e.g.*, S. Rep. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2169; *see also Heller*, 554 U.S. at 628.

3

requires us to look at the 'conduct' being regulated, not the status of the person performing the conduct."). Because firearm possession is conduct covered by the Second Amendment, it is presumptively protected.

### b. **Felons are included in "the people" protected by the Second Amendment.**

The Second Amendment covers all citizens by conferring the right "to keep and bear arms" on "the people." U.S. Const. amend. II. The plain text does not limit who is included in "the people." *Id*. The text simply says: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has confirmed that "the Second Amendment right is exercised individually and belongs to *all* Americans." *Daniels*, 77 F.4th at 342 (quoting *Heller*, 554 U.S. at 581). So whether a category of person can be disarmed is a question of historical tradition—and falls under the second *Bruen* step, not the Second Amendment's plain text.

*Heller* rejected the theory that "the people" protected by the Second Amendment were limited to a subset—i.e., those in a militia. 554 U.S. at 579–81, 592–600. The Court explained that when the Constitution refers to "'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset," and that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 580–81. *Heller* explained that, like the First, Fourth, and Ninth Amendments, the Second Amendment codified an individual right. *Id.* at 579–80. Categorically excluding felons from the plain text of the Second Amendment would, therefore, endanger felons' basic protections under the First and Fourth Amendment. *See Range v. Att'y Gen.*, 69 F.4th 96, 101-02 (3d Cir. 2023). Otherwise, it would run afoul of *Bruen*'s directive that the Second Amendment is "not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 142

S. Ct. at 2156 (cleaned up); *cf. United States v. Coombes*, 629 F. Supp. 3d 1149, 1155-56 (N.D. Okla. 2022) (declining to exclude felons from the scope of the Second Amendment).

One sitting Justice—who joined the majority in *Bruen*—has explained that this language from *Heller* means that a person's status is properly considered in the question of historical tradition, rather than the purely textual question of the existence of the right. In *Kanter v. Barr*, then-Judge Barrett reasoned that, under *Heller*, the word "people" refers to "all Americans"—that even those who can be lawfully restricted, are not "categorically excluded from our national community." 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111. The "question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all." *Id.*; *cf. United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045–46 (11th Cir. 2022) (interpreting *Heller* to say that felons and others who could be disarmed are still part of "the people" protected by the Constitution). Thus, a person's status as a felon is properly considered in the historical tradition inquiry and does not affect whether the person has a Second Amendment right. *Kanter*, 919 F.3d at 451–52.

Courts have agreed. *See Rahimi*, 61 F.4th at 451–53; *Daniels*, 77 F.4th at 342; *Jimenez-Shilon*, 34 F.4th at 1046 (felons "are indisputably part of 'the people'"); *Range*, 69 F.4th at 101-03 (holding, post-*Bruen*, that felons are among "the people" safeguarded by the Second Amendment); *Bullock*, 2023 WL 4232309, at *20-21 (finding felons are not excluded from the Second Amendment at step one); *Forbis*, No. 23-CR-133-GKF, 2023 WL 5971142, at *3 (N.D. Okla. Aug. 17, 2023) (convicted felons are part of the people); *Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at * 8 (M.D. Pa. Aug. 22, 2023) (defendant, as a convicted felon, has Second

Amendment rights); *Prince*, No. 1:22-CR-00240, 2023 WL 7220127, at *4-5 (N.D. Ill., Nov. 2, 2023).

Because the Second Amendment right belongs to "all Americans," *Heller*, 554 U.S. at 580–81, the categorical ban on an individual's possession of a firearm based on their status as a felon is presumptively unconstitutional under the plain text of the Second Amendment. Whether a category of person can be disarmed is a question of historical tradition, which is the government's burden under *Bruen*: a burden the government cannot meet.

### III. The Government cannot show that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."

The threshold question is whether the problem addressed by section 922(g)(1) is longstanding or more recent. The "general societal problem" at which section 922(g)(1) is directed—felons' access to guns—"has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. As a result, section 922(g)(1)'s ban on Hostettler's possessing a firearm is unconstitutional unless the Government shows a robust tradition of "distinctly similar" regulations as of 1791, when the Second Amendment was ratified. *Id.*; *see Range*, 69 F.4th at 103 (explaining that, in contrast to "regulations targeting longstanding problems," which "must be 'distinctly similar' to a historical analogue," "'modern regulations that were unimaginable at the founding' need only be 'relevantly similar' to one"); *United States v. Harrison*, __ F.Supp. 3d __, 2023 WL 1771138, at *6 (W.D. Okla. Feb. 3, 2023) ("[T]he United States has not identified a single historical law that is 'distinctly similar' to § 922(g)(3)—which *Bruen* suggests is dispositive."); *Worth v. Harrington*, __ F.Supp. 3d __, 2023 WL 2745673, at *16 (D. Minn. Mar. 31, 2023) (dismissing state's proffered historical analogues because they "do not burden the Second Amendment right in a manner distinctly similar to the age requirement Minnesota's permit-to-carry law").

Section 922(g)(1) "bears little resemblance to laws in effect at the time the Second Amendment was ratified." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012). As one historian found after "a full survey of printed session laws pertaining to gun regulation in the thirteen colonies and Vermont between 1607 and 1815," "at no time between 1607 and 1815 did the colonial or state governments of what would become the first fourteen states exercise a police power to restrict the ownership of guns by members of the body politic." Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America*, 25 LAW & HIST. REV. 139, 142, 143 & n.11 (2007).

Other scholars agree. "[O]ne can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I." C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 HARV. J. L. & PUB. POL'Y 695, 708 (2009). It appears New York became the first state to enact such a ban, when in 1917 it made a felony conviction a basis for revoking a concealed-weapon permit. *Id.* No other state passed a felon-disarmament law until 1923. *Id.*; *see* Adam Winkler, Heller*'s Catch-22*, 56 UCLA L. REV. 1551, 1563 (2009) ("Bans on ex-felons possessing firearms were first adopted in the 1920s and 1930s, almost a century and a half after the Founding."); *see also* Lawrence Rosenthal, *The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 WASH. U. L. REV. 1187, 1211 (2015) (similar); Nelson Lund, *The Second Amendment,* Heller*, and Originalist Jurisprudence*, 56 UCLA L. REV. 1343, 1357 (2009) (similar); Carlton F.W. Larson, *Four Exceptions in Search of a Theory*, 60 HASTINGS L.J. 1371, 1376 (2009) (similar).

In short, there was no "historical tradition," circa 1791 of gun regulations "distinctly similar" to section 922(g)(1). *Bruen*, 142 S. Ct. at 2130-31; *see Range*, 69 F.4th at 106 (holding "that the Government has not shown that the Nation's historical tradition of firearms regulation

supports depriving Range [a convicted felon] of his Second Amendment right to possess a firearm"); *Bullock*, 2023 WL 4232309 at *21-31. The "Founders themselves could have adopted" laws like section 922(g)(1) to "confront" the "perceived societal problem" posed by felons' access to guns. *Bruen*, 142 S. Ct. at 2131. But they declined to do so, and that inaction indicates that section 922(g)(1) is unconstitutional. *Id.* The government has failed to meet its burden of showing the categorical ban under § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation. *See Forbis*, No. 23-CR-133-GKF, 2023 WL 5971142, at *1 (N.D. Okla. Aug. 17, 2023) (government failed to meet its burden); *Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023) (same); *Harper*, No. 1:21-CR-0236, 2023 WL 5672311, at *1 (M.D. Pa. Sept. 1, 2023) (same); *Prince*, No. 1:22-CR-00240, 2023 WL 7220127 (N.D. Ill., Nov. 2, 2023) (same); *Delany*, No. 22 CR 463, 2023 WL 7325932 (N.D. Ill. Nov. 7, 2023) (same); *Leblanc*, No. CR 23-00045-BAJ-RLB, 2023 WL 8756694 (M.D. La. Dec. 19, 2023) (same).

**IV. The statute is also unconstitutional as applied to Mr. Hostettler.**

Even if the Court determines that § 922(g)(1) is not facially unconstitutional, the statute violates the Second Amendment as applied to Mr. Hostettler. "As-applied challenges are the basic building blocks of constitutional adjudication[.]" *Gonzalez v. Carhart*, 550 U.S. 124, 168 (2007). "Unlike a facial challenge, an as-applied challenge does not contend that a law is unconstitutional as written, but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Binderup v. Att'y Gen.*, 836 F.3d 336, 345 (3d Cir. 2016) (citation omitted); *see also generally Daniels*, 2023 WL 5091317 (conducting as-applied *Bruen* analysis of § 922(g)(3)).

Mr. Hostettler's conduct—*i.e.*, possession of a firearm and ammunition in common use for self-defense—is clearly protected by the plain text of the Second Amendment. *See Bruen*, 142 S.

Ct. at 2129-30. The burden is, thus, on the Government to show that disarming those with criminal records like Mr. Hostettler is consistent with the Nation's historical traditions. *See id*. at 2130. There is no such tradition of barring felons from firearm possession, let alone felons with records like his.

The Third Circuit recently explained that, under the *Bruen* framework, § 922(g)(1) violates the Second Amendment at least as applied to certain offenders. *See Range*, 69 F.4th 96. Range was barred from possessing a firearm because of his conviction for welfare fraud. *Id*. at 98. The district court dismissed his challenge and was affirmed by a Third Circuit panel. *Id*. at 99. But, after rehearing en banc, the Third Circuit reversed. *Id*. Even prior to *Bruen*, the Third Circuit had determined that § 922(g)(1) was unconstitutional as applied to those convicted of certain less serious offenses—corrupting a minor and carrying a handgun without a license. *See Binderup*, 836 F.3d 336 (citation omitted). *Range* acknowledged that *Bruen* had overturned the multifactored "seriousness" inquiry undertaken in Binderup, in favor of the simpler burden on the Government to show historical evidence for the challenged. *See Range*, 69 F.4th at 100-01.

*Range* rejected every historical analogue proffered by the Government in favor of disarming certain felons. *See id*. at 103-06. Notably, it rejected reliance on pre-*Bruen* caselaw and references to so-called "longstanding prohibitions," that were not supported by historical evidence. *Id*. at 103-04, 106. It also dismissed laws disarming groups of purportedly dangerous or unvirtuous people, as "far too broad" an analogy under *Bruen*. *Id*. at 104-05. And it dismissed reliance on the historical use of capital punishment for felons, explaining that the power to execute certain people does not imply the power to disarm. *Id*. at 105-06. It specifically declined to decide whether there was a historical tradition of disarming even dangerous or violent felons, or otherwise distinguishing whether other felons might be permissibly disarmed. *See id*. at 104 n.9. As it explained, the

9

Government had simply failed to meet its burden to show a historical tradition of disarming those like Range. *See id*. Though, as discussed elsewhere, other judges acknowledged that the court's reasoning would seem to apply more broadly to other felons, because the Government relied on the same historical evidence in such cases. *See id*. at 113 (Shwartz, J., dissenting), at 118, 131 (Krause, J., dissenting). Since *Range*, a district court in has found that § 922(g)(1) violates the Second Amendment even as applied to a man convicted of aggravated assault and manslaughter. *See Bullock*, 2023 WL 4232309.

For many of the reasons articulated in *Range* and *Bullock*, the Government cannot show a historical tradition of disarming people like Mr. Hostettler. *Range* and *Bullock* appear to acknowledge an absence of historical evidence to support disarming felons at all. But even looking to the limited holding of *Range*, and certain pre-*Bruen* precedent, courts have acknowledged that there is at least no history to support disarming those convicted of less serious or non-violent crimes. *See Binderup*, 836 F.3d 336; *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting) (noting insofar as there was any power to disarm, it extended only to those proven to be dangerous). And the *Bullock* court found that the Government had failed to even show a historical tradition of disarming "either the violent or the dangerous." 2023 WL 4232309, at *31.

It is the Government's burden to show a historical tradition that supports disarming people like Mr. Hostettler. That is, even if the Court were to accept that historical evidence supports disarming some felons, for Mr. Hostettler's as applied challenge, the Government must show it supports disarming him. *See generally Range*, 69 F.4th 96; *Daniels*, 2023 WL 5091317; *see also Kanter*, 919 F.3d at 467 (Barrett, J., dissenting) (explaining that non-violent felons could bring as applied challenges to § 922(g)(1)). Mr. Hostettler's predicate felony convictions do not suggest that he is particularly "dangerous," or otherwise subject to firearm restrictions like those targeted

at the founding. Indeed, there is little evidence that any categories of people were permanently disarmed at the founding, let alone those like Mr. Hostettler. Rather, he has been convicted of two felony drug possession offenses, one fourth-degree felony for carrying a concealed weapon, and one federal conviction for being a felon in possession of a firearm.[3] There is no historical evidence to support disarming felons at all, but certainly not those with felony criminal records like Mr. Hostettler. He is at least the type of offender recognized in *Range*, *Bullock*, or in the *Kanter* dissent, for whom there is no historical evidence of disarmament.

Because the Government cannot show that restricting firearms for those with criminal histories like Mr. Hostettler's is consistent with the Nation's historical traditions, § 922(g)(1) violates the Second Amendment as applied to him. *See Bruen*, 142 S. Ct. at 2126.

## V. Conclusion

"The Second Amendment guaranteed to all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Bruen*, 142 S. Ct. at 2156 (internal quotation marks omitted). Section 922(g)(1)'s total lifetime ban on Mr. Hostettler possessing a firearm governs conduct covered by the Second Amendment and is inconsistent with this Nation's historical tradition of firearm regulation. Because the statute runs afoul of the Second Amendment, it is unconstitutional on its face and as applied. This Court therefore should dismiss the single-count indictment against Mr. Hostettler.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar No. 0051928

---

[3] Mr. Hostettler's misdemeanor convictions and conduct not resulting in convictions are not properly considered as part of this analysis, because his disarmament under § 922(g)(1) is based only on his felony convictions.

11

*/s/Carolyn M. Kucharski*
CAROLYN M. KUCHARSKI
Assistant Federal Public Defender
Ohio Bar: 0062119
*/s/ Cathi Adinaro Shusky*
CATHI ADINARO SHUSKY
Attorney at law
Ohio Bar: 0088731
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: carolyn_kucharski@fd.org
E-mail: cathi_shusky@fd.org