UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:23-cr-00654 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| BO BRYANT HOSTETTLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# OPINION AND ORDER

Defendant Bo Bryant Hostettler moves to dismiss the indictment, which charges him with being a felon in possession of a firearm and ammunition. He argues that the federal statute under which he is charged, 18 U.S.C. § 922(g)(1), violates the Second Amendment both facially and as applied to him. Previously, the Court analyzed the text of the Second Amendment, as well as the history and tradition of federal firearms regulation, and ruled that Section 922(g)(1) is constitutional as applied to three defendants who had criminal histories evidencing sufficiently dangerous conduct to justify at least a temporary deprivation of their fundamental right to armed self-defense. *See United States v. Berry*, No. 5:22-cr-536, 2024 WL 1141720, at *21, ___ F. Supp. 3d ___, ___ (N.D. Ohio Mar. 15, 2024). Applying that same analysis to Mr. Hostettler, the Court determines that the United States has not carried its burden to show that the statute is constitutional as applied to him. Therefore, for the reasons more fully explained below, the Court **GRANTS** Defendant's motion to dismiss the indictment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Prior Felony Convictions

Defendant Bo Bryant Hostettler is 38 years old. (ECF No. 6, PageID #26.) Over the last 20 years, Mr. Hostettler has been convicted of six felony offenses.

First, in 2005, at age 19, Mr. Hostettler was convicted in California State court of possession of a controlled substance and sentenced to sixteen months in prison. (*Id.*, PageID #19.) The record indicates that Mr. Hostettler possessed methamphetamine for the purpose of sale. (*Id.*)

Second and third, at age 23, in 2008, Mr. Hostettler was convicted of forgery and receiving stolen property, both fifth-degree felonies (the lowest level felony under Ohio law), in State court in Ohio. (*Id.*, PageID #19–20.) Mr. Hostettler was sentenced to six months in prison and ordered to pay about $2,800.00 in restitution. (*Id.*) Fourth, in 2012, at age 27, Mr. Hostettler was convicted in State court in Ohio for carrying a concealed weapon, a fourth-degree felony, and sentenced to probation for two years. (*Id.*, PageID #21.) Fifth, in 2017, at age 31, Mr. Hostettler was convicted in State court in Ohio of aggravated possession of drugs, a fifth-degree felony (and a misdemeanor for operating a vehicle while impaired). (*Id.*, PageID #22.) Under Ohio law, aggravated drug possession means that the defendant possessed a Schedule I or II drug. Ohio Rev. Code § 2925.11(C)(1). Mr. Hostettler was sentenced to six months in jail but released within three. (ECF No. 6, PageID #22)

Sixth, and most recently, in 2019, Mr. Hostettler pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and sentenced to forty-eight months in prison. (*Id.*, PageID #25; *see United States v. Hostettler*, No. 5:18-cr-

2

000697, Minutes (N.D. Ohio Feb. 12, 2019).) In that case, the predicate offense charged was Mr. Hostettler's two-decade-old conviction in California for possession of a controlled substance for sale.

To summarize, Mr. Hostettler has two prior felony convictions related to firearms: one for carrying a concealed weapon and one for being a felon in possession (which is the predicate offense charged in the indictment in this case). He has two prior felony convictions for drug offenses: possession with intent to sell, which served as the predicate offense in his prior felon in possession of a firearm conviction, and aggravated drug possession. The record does not indicate that he used or possessed a firearm in connection with either of his drug offenses. His other felony convictions are for forgery and receiving stolen property—again, the record provides no indication that either offense involved a firearm or any act or threat of violence.

### B. Prior Misdemeanor Convictions

Mr. Hostettler has more than twenty-five misdemeanor convictions in California and Ohio courts. (*See generally* ECF No. 6.) These convictions include, among other things, assault, various drug offenses, disorderly conduct, domestic violence, and operating a vehicle while under the influence. (*Id.*) In 2017, Mr. Hostettler was charged in an Ohio municipal court with burglary, a second-degree felony, but pled guilty to a reduced charge of aggravated trespass, a first-degree misdemeanor, and sentenced to 180 days in jail with 120 days suspended. (*Id.*, PageID #23.)

C.     **Current Indictment and Motion to Dismiss**

On December 20, 2023, a grand jury returned an indictment charging Mr. Hostettler with a single count of being a felon in possession of a firearm, specifically a Taurus Model 856, 0.38 special caliber revolver, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1, Page ID #1.) The indictment identifies Defendant's predicate offense as his 2019 felon in possession conviction. (*Id.*) As noted, the predicate offense in that case was Mr. Hostettler's conviction in 2005 of felony drug possession for sale. At the time of the offense in this case, Mr. Hostettler was on federal supervised release for his prior felon in possession conviction.

On February 22, 2024, Defendant moved to dismiss the indictment on the basis that Section 922(g)(1) is unconstitutional both on its face and as applied to him. (ECF No. 12, PageID #49.) The Court stayed briefing on the motion until after it had issued its decision in three other cases bringing similar constitutional challenges. (Order, Feb. 22, 2024; *see United States v. Berry*, No. 5:22-cr-536 (N.D. Ohio); *United States v. Tolbert*, 5:23-cr-222 (N.D. Ohio); *United States v. Gardner*, 4:23-cr-503 (N.D. Ohio).) On March 15, 2024, after hearing oral argument from both the United States and the defendants in those cases, the Court issued its ruling. Then, it afforded the parties in this case an opportunity to file supplemental briefing. (Order, Mar. 18, 2024.) The parties declined to do so. (ECF No. 14, PageID #94.) Therefore, the Court proceeds based on the record before it.

**GOVERNING LEGAL STANDARD**

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Under the

4

Fifth and Sixth Amendments, an indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). A defendant may move to dismiss a defective indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). On a motion to dismiss, the Court must read the indictment "as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). A defendant may move to dismiss an indictment for failure to state an offense on the basis that the "statute apparently creating the offense is unconstitutional." *United States v. Rathburn*, 771 F. App'x 614, 623 n.8 (6th Cir. 2019) (quoting *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973)).

### A. Nature of the Challenge

Defendant brings both facial and as-applied challenges to the constitutionality of 18 U.S.C. § 922(g)(1). A law is facially unconstitutional if "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U. S. 739, 745 (1987). In contrast, an as-applied challenge tests only whether the contested "law is unconstitutional as enforced against the [party] before the court" based on the discrete facts in the case. *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013).

"Facial challenges are disfavored . . . ." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). "The usual judicial practice is to address an as-applied challenge before a facial challenge . . . ." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327 (6th Cir. 2009) (en banc) (citation

5

omitted). In keeping with the usual practice, the Court takes up Defendant's as-applied challenge first.

### B. Second Amendment Standard

Previously, the Court analyzed the Supreme Court's Second Amendment precedents in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), in depth, as well as other case law discussing the constitutionality of Section 922(g)(1) and the history and tradition of federal firearms regulation. *See Berry*, 2024 WL 1141720, at *4–18 & *21, ___ F. Supp. 3d at ___–___ & ___. The Court relies on that analysis and incorporates it here but will not repeat it in its entirety. For present purposes, based on the text of the Second Amendment and the history and tradition of federal firearms regulation, in its ruling in *Berry* the Court made four key determinations:

*First,* "[f]or most of our history . . . the Federal Government did not significantly regulate the possession of firearms by law-abiding citizens." *Berry*, 2024 WL 1141720, at *16, ___ F. Supp. 3d at ___ (quoting *Heller*, 554 U.S. at 625). In fact, federal law historically expanded access to firearms. *See Range v. Garland*, 69 F.4th 96, 104 (3d Cir. 2023) (en banc). Not until the New Deal era did Congress enact "the first major federal firearms law" as an exercise of its taxing power, the National Firearms Act. *Heller*, 554 U.S. at 637 (Stevens, J., dissenting). And the Gun Control Act of 1968 enacted the statute from which Section 922(g)(1) descends.

*Second,* despite the historical expansion of access to gun rights, the Nation's history also has a tradition of disarming individuals, at least temporarily, who

6

possess some permissible disqualifying characteristic—such as dangerousness. *Berry*, 2024 WL 1141720, at *19, ___ F. Supp. 3d at ___. A dangerous individual is one "whose gun possession threatens others." *Id.* (canvassing authority). In Section 922(g)(1), Congress chose to make a prior felony conviction disqualifying for firearm possession. But using felon status as a proxy for dangerousness is both under- and over-inclusive and, under *Bruen*, requires analyzing whether the statute presents a "distinctly similar" restriction as the history of disarming dangerous individuals that justifies the statute's burden on the right of armed self-defense. *Id.* Primarily because of the scant evidence of felon-disarmament statutes, at least before 1968, courts disagree over what felonies present regulations distinctly similar to those historically and traditionally imposed by law to allow constitutional application of Section 922(g)(1). The Sixth Circuit has yet to address the issue outside the context of plain-error review. *Berry*, 2024 WL 1141720, at *11, ___ F. Supp. 3d at ___.

*Third*, "the historical record generally shows that laws providing for disarmament of particular individuals were delimited in time or afforded them a means for restoration of the right to keep and bear arms." *Id.* at *21, ___ F. Supp. 3d at ___. Simply put, "none of the historical regulations . . . permanently disarm a group of people." *Id.* (quoting *United States v. Williams*, No. 23-cr-20201, 2024 WL 731932, at *20 (E.D. Mich. Feb. 22, 2024)). Even the sweeping Gun Control Act of 1968, which criminalized firearm ownership after a felony conviction, "afforded felons a pathway to restoration of the right to bear arms." *Berry*, 2024 WL 1141720, at *17, ___ F. Supp. 3d at ___ (quoting 18 U.S.C. § 925(c)).

7

*Fourth*, the United States bears the burden of "affirmatively prov[ing] that [Section 922(g)(1)] is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. Under this standard, courts deciding Second Amendment challenges may inquire into analogous laws to assess whether "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29. The United States must "identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30.

## ANALYSIS

Under federal law, it is unlawful for any person "who has been convicted in any court of" a felony, "to possess in or affecting commerce[] any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Put simply, under federal law, "a person who is convicted of a felony is prohibited from possessing firearms." *United States v. Bean*, 537 U.S. 71, 74 (2002). Defendant challenges the constitutionality of this statute, arguing that his prosecution for possessing a gun as a felon is inconsistent with the fundamental rights that the Second Amendment secures.

**I.     As-Applied Challenge**

The United States maintains that there is clear historical support for restricting possession of firearms by persons who, like Mr. Hostettler, previously committed felonies. (ECF No. 13, PageID #85–92.) It argues that any requirement that it identify a "historical twin" misunderstands Supreme Court precedent. (*Id.*,

8

PageID #88.) In *Berry*, the Court framed the inquiry differently: the United States bears the burden of establishing that Defendant's underlying felony is "distinctly similar" to the historical analogues that support disarmament based on dangerousness. 2024 WL 1141720, at *20, ___ F. Supp. 3d at ___. In *Berry*, the Court considered the felony robbery convictions of three defendants and determined that "Ohio's felony robbery offense is 'distinctly similar' to the historical predicates" supporting disarmament based on dangerousness. *Id.* Accordingly, the Court held that, as applied to those defendants, "Congress may disarm those with prior felony convictions for robbery." *Id.*

### I.A. Mr. Hostettler's Predicate Drug Offense

The United States predicated the current indictment on Mr. Hostettler's prior conviction for being a felon in possession of a firearm—making this indictment derivative of his prior federal conviction for the same offense. Because of the dearth of historical evidence supporting permanent felon disarmament, the Court looks past Mr. Hostettler's prior federal conviction under Section 922(g)(1) to the predicate offense for his first felon in possession conviction, Mr. Hostettler's two-decade-old drug possession conviction. The question becomes whether that conviction serves as an adequate proxy for dangerousness to justify disarmament and application of Section 922(g)(1).

The United States makes no argument that Mr. Hostettler's 2005 drug felony is distinctly similar to historical analogues that disarmed individuals based on dangerousness. Under California law, a conviction for Mr. Hostettler's drug possession offense, possession of a controlled substance with intent to sell, does not

9

require the use of a firearm or any violence. *See* Cal. Health & Safety Code § 11351. Based on the record, there is simply no way to know whether Mr. Hostettler was a dangerous drug dealer or an addict who sold small amounts of drugs to support his habit. Further, the United States presents no evidence that Mr. Hostettler had a firearm or used or threatened any violence in the commission of that offense. Nothing in the record suggests that Mr. Hostettler's conviction was anything other than a non-violent drug offense. Nor does the government cite any authority that drug felonies are distinctly similar to the type of circumstances historically justifying temporary disarmament. The statutes in the record involve the temporary disarmament of minors, vagrants, and intoxicated persons (ECF No. 13, PageID #74 & 77–78), which, in contrast to classification as a felon, are all nonpermanent conditions. *Berry*, 2024 WL 1141720, at *14–15, ___ F. Supp. 3d at ___–___.

Finally, the United States does not argue that all drug felonies are inherently dangerous for the purposes of disarmament under Section 922(g)(1). Nor could it. A categorical approach to depriving persons of fundamental constitutional rights presents obvious due process problems. *See Tyler v. Hillsdale Cnty. Sherriff's Dep't*, 837 F.3d 678, 690 (6th Cir. 2016) (en banc). A single drug offense can vary in seriousness and the danger to any person or the community more generally. With the right factual and historical record, such an offense might serve as a proxy for dangerousness and justify disarmament under Section 922(g)(1). But this record lacks such evidence and argument. Accordingly, the United States fails to carry its burden of showing that Mr. Hostettler's predicate drug offense (or prior federal

10

conviction for being a felon in possession) serves as an adequate proxy for dangerousness or identifying any other distinctly similar historical analogue to justify disarmament.

**I.B. Mr. Hostettler's Remaining Criminal History**

In *Berry*, the Court also considered whether the defendants' criminal records, beyond their robbery convictions, served as a proxy for dangerousness to confirm constitutional application of Section 922(g)(1). *See Berry*, 2024 WL 1141720, at *20, ___ F. Supp. 3d at ___. Those defendants' criminal histories escalated in seriousness over time and included crimes that were unquestionably and invariably dangerous, such as manslaughter in one case. *Id.*

Overall, Mr. Hostettler has no record of felony violence. His convictions for forgery and receiving stolen property are non-violent. His conviction in 2017 for aggravated possession of drugs did not, so far as the record shows, involve a firearm or any violence. The term "aggravated" refers to the type of drug involved—not any characteristic of the offense involving actual or threatened violence. *See* Ohio Rev. Code § 2925.11(C)(1). Accordingly, for Mr. Hostettler, these offenses cannot serve as a proxy for dangerousness rising to the level of a felony to justify disarmament. *See Range*, 69 F.4th at 105–06 (non-violent felony predicate offense did not support disarmament under Section 922(g)(1)); *Kanter v. Barr*, 919 F.3d 437, 467–69 (7th Cir. 2019) (Barrett, J., dissenting) (same).

Finally, analysis of the concealed carry conviction might arguably lead to a different result. But the right to carry a firearm lies at the heart of the rights the Second Amendment secures—after all, the text expressly protects "the right to keep

11

*and bear* arms." U.S. Const. amend. II (emphasis added). Nevertheless, States have regulated how individuals publicly "bear" or carry firearms for centuries. *See Bruen*, 597 U.S at 50–70 (canvassing the history of public-carry restrictions). Those restrictions operated to "limit the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms." *Id.* at 70. Generally, this history or tradition restricted individuals from carrying firearms in a way that caused fear of injury to others or breached the peace.

On the right factual record, then, a concealed carry conviction might be distinctly similar to the historical analogues that support disarmament based on dangerousness. Here, however, the United States presents no evidence elevating the circumstances of Mr. Hostettler's concealed carry conviction from merely possessing a firearm to causing fear of injury to others or breaching the peace. For example, there is no indication that Mr. Hostettler threatened someone with the concealed firearm, caused a disturbance of the peace, or used it in the commission of another felony. In other words, so far as the record shows, that conviction results from nothing more than carrying a firearm for self-defense—a core right that the Second Amendment secures. Moreover, Mr. Hostettler's concealed carry conviction was not charged as the predicate offense in this indictment or in his prior federal conviction for being a felon in possession. In any event, the United States does not argue that this conviction supports the prosecution in this case.

12

In a different context, the Sixth Circuit has determined that a concealed carry conviction does not qualify as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). *See United States v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007); *United States v. Alexander*, 217 F. App'x 417, 422 (6th Cir. 2007) (noting that Ohio "*expressly permit[s]*" residents with the proper licensure to carry a concealed weapon). In doing so, the Sixth Circuit emphasized that "there is no reason to think that these felons are especially dangerous to society." *Alexander*, 217 F. App'x at 422.

Obviously, the categorical approach presents different analysis suitable for different purposes. Still, the Sixth Circuit's reasoning is persuasive. "Carrying an illegal weapon may involve a continuing risk to others, but the harm is not so immediate as to present a serious risk of personal injury to another." *Flores*, 477 F.3d at 435 (quoting *United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990)) (cleaned up). Additionally, the Second Amendment expressly covers carrying a weapon. In Mr. Hostettler's case, the sentence of two years' probation underscores the fact that a judge found that his offense was not sufficiently dangerous to warrant incarceration for any amount of time. For these reasons, Mr. Hostettler's conceal carry conviction does not serve as a sufficient proxy for dangerousness.

Also, Mr. Hostettler's criminal history includes some violent misdemeanors. In *Berry*, the Court explained that one defendant's violent misdemeanor record further "confirm[ed] the application of the disability" imposed by Section 922(g)(1)—beyond his underlying violent felony of robbery. 2024 WL 1141720, at *20, ___ F. Supp. 3d at ___. In Section 922(g)(1), however, Congress decided to disqualify a

13

person from firearm possession based on his status as a felon, not a misdemeanant. Therefore, the Court does not consider these prior misdemeanor convictions when assessing Mr. Hostettler's dangerousness under the statute.

Given the totality of Mr. Hostettler's criminal record, this case presents a close question. But *Bruen* places the burden on the United States to justify restricting the fundamental constitutional right that the Second Amendment secures. On this record, the United States has not carried that burden. Because it has failed to do so, the Court need not consider the permanence of the disarmament Section 922(g)(1) enforces as applied to Mr. Hostettler. *See Berry*, 2024 WL 1141720, at *21, ___ F. Supp. 3d at ___.

## II. Facial Challenge

With respect to Defendant's facial challenge, the Court makes two points. First, because the government failed to carry its burden to demonstrate that Section 922(g)(1) is constitutional as applied to Defendant, the Court need not reach the facial challenge. *See Ayotte v. Planned Parenthood*, 546 U.S. 320, 329 (2006). Second, in any event, a facial challenge is successful only if "no set of circumstances exist[]" under which application of Section 922(g)(1) is constitutional. *Salerno*, 481 U.S. at 745. Having determined in *Berry* that Section 922(g)(1) may be constitutionally applied to the three defendants there, Defendant's facial challenge here fails as a matter of law.

## CONCLUSION

For all these reasons, the Court determines that the United States cannot enforce Section 922(g)(1) in this case against Mr. Hostettler consistent with the

Second Amendment.  Therefore, the Court **GRANTS** Defendant's motion to dismiss the indictment.  Based on this disposition, the Court **VACATES** the order of detention (ECF No. 8, PageID #30) and **ORDERS** that Defendant be released from federal custody forthwith, subject to any other detainers to which he is subject.

**SO ORDERED.**

Dated:  April 10, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio